**E-Filed 7/6/2010**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS DISTRICT 9 PENSION PLAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KENNETH MALDONADO, an individual,<br><br>Defendant. | Case Number C 10-461 JF<br><br>ORDER[1] (1) GRANTING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT AND (2) DENYING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT<br><br>[Re: Docket Nos. 15, 20] |

## I. INTRODUCTION

Plaintiffs filed the complaint in this action on February 4, 2010, asserting claims under the Employee Retirement Income Security Act of 1974 ("ERISA") and California common law. On February 17, 2010, Plaintiffs filed a proof of service indicating that service of process was effected on Defendant Kenneth Maldonado ("Defendant") on February 12, 2010. Defendant did not file a responsive pleading within the time provided by law. On March 26, 2010, Plaintiffs obtained a clerk's entry of default. Defendant now moves to set aside the default, and Plaintiffs move for default judgment. The Court heard oral argument on July 2, 2010. For the reasons

---

[1] This disposition is not designated for publication in the official reports.

discussed below, Defendant's motion will be granted, and Plaintiffs' motion will be denied.

## II.  BACKGROUND

**A.     Plaintiffs' Earlier Filed Action and Electronics Unlimited's Bankruptcy Filing**

Defendant was the Chief Executive Officer and sole shareholder of Jim Van Camp, Inc., d/b/a Electronics Unlimited ("EU"), a licensed contractor in Fresno, California.  Plaintiffs International Brotherhood of Electrical Workers District 9 Pension Plan (the "Pension Trust"), the Northern California-Northern Nevada Sound and Communications District No. 9 Health and Welfare Trust Fund (the "Health Care Trust"), and the Northern California-Northern Nevada Sound and Communications District No. 9 Joint Apprenticeship and Training Committee (the "Training Trust") (collectively the "Trust Funds") are multi-employer employee benefit plans under ERISA and are jointly trusteed employee benefit trusts under the Labor Management Relations Act ("LMRA").  Compl. ¶ 3.  According to Plaintiffs, Defendant and EU failed to make employer contributions to the Trust Funds from October 2008 through February 2009 as required under the collective bargaining agreement between the International Brotherhood of Electrical Workers ("IBEW") and the National Electrical Contractors Association ("NECA") to which EU agreed to be bound.  Compl. ¶¶ 9-10; Pls.' Opp'n 1.

On March 20, 2009, Plaintiffs filed a civil action against EU in this Court, seeking "unpaid contributions, liquidated damages, interest, attorneys' fees, and costs."  Pls.' Opp'n 2; *see* Civil Case No. 09-01235 RMW.  Subsequently, EU filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of California.  The Trust Funds submitted a claim in EU's bankruptcy action for $92,245.66, the same amount sought in the 2009 lawsuit.  *See* Maldonado Decl. ¶ 4, Ex. 2.  EU received a discharge of debtor on November 24, 2009.  Compl. ¶ 14; Maldonado Decl. ¶ 3.

**B.     The Instant Action and Defendant's Failure to Respond**

In the instant action, Plaintiffs allege that Defendant is personally liable under ERISA for the contributions EU allegedly failed to make under the collective bargaining agreement.  The complaint also alleges that Defendant made misrepresentations to the Trust Funds with respect to

2

Case No. C 10-461 JF
ORDER (1) GRANTING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT AND (2) DENYING
PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
(JFLC3)

EU's financial status and his intention to reimburse them for delinquent contributions. Compl. 7-8. Among other things, Plaintiffs seek "unpaid principal and liquidated damages currently estimated to be approximately $92,145.66 for the months of October 2008 through February 2009." Compl. 8.

Although Defendant acknowledges that he was personally served on February 12, 2010, he failed to respond to Plaintiffs' complaint until he filed the instant motion. Defendant asserts that when he received the summons and complaint he "took a glance at the first page of the packet he had received and read that Plaintiffs were suing to collect the $92,245.66 in unpaid contributions." Def.'s Mot. 4. Defendant states that he believed he did not need to respond to the complaint because he "assumed that Plaintiffs' claims for money were similar to other monetary demands he had received, and that the debt claimed by Plaintiffs had also been discharged through the bankruptcy and would be handled in the bankruptcy action." Def.'s Mot. 5.

Defendant also attempted to contact his bankruptcy attorney, Timothy Armstrong, but he was informed that Armstrong could not meet with him until April 7, 2010, for health reasons. Maldonado Decl. ¶ 6. When Defendant did meet with Armstrong on April 7, Armstrong informed him that he needed to respond to the complaint and referred him to an employment law firm. *Id.* at ¶ 7. Defendant contacted the law firm immediately and only then learned both that he had missed the deadline for filing a responsive pleading and that his default had been entered on March 26, 2010. *Id.* at ¶ 8. After Plaintiffs declined to stipulate to set aside the default, Defendant filed the instant motion. Plaintiffs subsequently filed their motion for default judgment.

### III.  LEGAL STANDARD

**A.     Standard for Setting Aside Default and Vacating Default Judgment**

Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause." A good cause analysis under Rule 55(c) requires consideration of three factors: (1) whether the defendant engaged in culpable conduct that led to the default; (2)

3

whether the defendant had a meritorious defense; and (3) whether reopening the default judgment would prejudice the plaintiff. *Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc.* 375 F.3d 922, 925-26 (9th Cir. 2004). These factors are disjunctive – thus the Court may deny the motion if any of the three factors is present. *Id*. The moving party bears the burden of demonstrating that one or more of these factors are present. *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001).

## IV.  DISCUSSION

**A.  Motion to Set Aside Default**

### 1.  Defendant Did Not Engage in Culpable Conduct Leading to the Default

As the Ninth Circuit has held:

> Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not "intentional" under our default cases, and is therefore not necessarily–although it certainly may be, once the equitable factors are considered–culpable or inexcusable. . . . In contrast, we have typically held that a defendant's conduct was culpable for purposes of the *Falk* factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond.

*Knoebber*, 244 F.3d at 697-98. Defendant contends that his failure to answer was the result of his erroneous assumption that the claim had been discharged through EU's bankruptcy action and the temporary unavailability of his bankruptcy attorney, which resulted from the attorney's poor health. Plaintiffs contend that Defendant's account is implausible; they point out that Defendant responded to other creditors by sending them a copy of EU's bankruptcy notice and they argue that the fact that Defendant did not respond to them in the same manner "demonstrates that he willfully chose to ignore this suit to his detriment." Pls.' Opp'n 6.

Defendant states under oath that he sought to respond to the complaint immediately after meeting with his bankruptcy attorney and being informed by that attorney that he needed to respond. There also appears to be no dispute that the delay between Defendant's receipt of the complaint and his meeting with his bankruptcy attorney was the result of circumstances beyond Defendant's control. In light of these uncontroverted facts, while it finds that Defendant's failure

4

to respond was negligent and his assumption that Plaintiffs' civil claim had been discharged through the EU bankruptcy action was erroneous, the Court concludes that Defendant's explanation is "inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Compare Gregorian v. Izvestia*, 871 F.2d 1515, 1522 (9th Cir. 1989) (finding defendants' conduct was not culpable where they refused to respond because they believed the court lacked subject matter jurisdiction) *with Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir.1999) (finding defendant bar owners' conduct was culpable where they ignored the summons and complaint despite frequent chats with their lawyers during the period for answer and filed false affidavits claiming they had not been served).

### 2. Defendant May Have Meritorious Defenses to Plaintiffs' Claims

Where a defendant is relying upon "excusable neglect" in seeking to set aside a default or vacate a default judgment, he "need only show facts or law in support of a viable defense; it is not necessary that the defendant prove that [he] will prevail on that defense." *United States v. Approximately $73,562 in U.S. Currency*, No. C 08-2458 SBA, 2010 WL 503040 at *3 (N.D. Cal. Feb. 5, 2010) (citing *Knoebber*, 244 F.3d at 700).

Here, Defendant maintains that he has viable defenses to all of Plaintiffs' claims. With respect to the ERISA recovery claim, Defendant argues that he has a "complete defense" because the claim is based on the proposition that the unpaid contributions are assets of the Trust Funds, a proposition not supported by the record. Defendant cites *Trustees of the Southern California Pipe Trades Health and Welfare Trust Funds v. Temecula Mechanical, Inc.*, 438 F. Supp. 2d 1156 (C.D. Cal. 2006), in which the court recognized that the general rule, adopted by the Ninth Circuit in *Cline v. Industrial Management Engineering & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2006), provides that "[u]ntil the employer pays the employer contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation." The *Temecula* court adopted a "commonly applied exception" to the general rule for situations in which "language in the plan document identif[ies] unpaid employer contributions as plan assets." *Temecula*, 438 F. Supp. 2d at 1163-67. Defendant maintains that

5

Case No. C 10-461 JF
ORDER (1) GRANTING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT AND (2) DENYING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
(JFLC3)

1  the *Temecula* exception does not apply here because the collective bargaining agreement does not
2  state that unpaid employer contributions are assets of the Trust Funds and that, as a result,
3  "Plaintiffs . . . will be unable to prove that Mr. Maldonado was an ERISA fiduciary who could be
4  held personally liable for EU's failure to pay all required contributions." Def.'s Mot. 8.

5        Plaintiffs contend that the *Temecula* exception does apply.  They argue that when EU
6  agreed to be bound to the collective bargaining agreement, it also agreed to be bound to the terms
7  of each of the Trust Funds' written trust agreements, which they assert "contain language
8  defining contributions owed to the Trust Funds as plan assets upon their respective due dates."
9  Pls.' Opp'n 8.  However, as Defendant argues, the actual language in the agreements is at least
10 arguably ambiguous as to whether unpaid contributions are to be treated as plan assets.  A
11 comparison of the language cited by Plaintiffs with the language at issue in *Temecula* is
12 instructive.  *Compare, e.g.*, Pl.'s Mot. 5: 16-17 ("'Contributions' shall be payments made *or to*
13 *be made to the Trust Fund* by any Employer under the terms of any collective bargaining
14 agreement agreed to by the Board of Trustees." (emphasis in original)) *with Temecula*, 438 F.
15 Supp. 2d at 1165 ("In section 2 . . . to Article II to six of the seven Trust Agreements it provides
16 that '*[t]he assets of this Trust Fund consist of* (1) the sums of money that have been *or will be*
17 *paid or which are due and owing* to the Fund by the Employers as required by Collective
18 Bargaining Agreements . . . [and] (5) all other Contributions and payments to *or due and owing*
19 to the Trustees from any source to the extent permitted by law . . . .' (Decl. Milton D. Johnson,
20 Exs. A-F)." (emphasis added)).  *See also Temecula*, 438 F. Supp. 2d at 1163 ("'The proper rule,
21 developed by caselaw, is that unpaid employer contributions are not assets of a fund unless the
22 agreement between the fund and the employer *specifically and clearly declares otherwise*.'"
23 (emphasis added)) (citing *Local Union 2134, United Mine Workers v. Powhatan Fuel, Inc.*, 828
24 F.2d 710, 714 (11th Cir. 1987)).  Without commenting on the ultimate merits of this defense, the
25 Court concludes that Defendant's argument under *Cline* and *Temecula* at least is sufficient to
26 support relief from default.
27       Defendant also contends that he has meritorious defenses to Plaintiffs' claims for alter
28

6

ego liability and fraud because he never made the misrepresentations he is alleged to have made. If proved, this would be a meritorious defense. Plaintiffs do not oppose Defendant's argument with respect to their non-ERISA claims, insisting that they "need only prove one cause of action to establish Defendant's liability." *See* Pls.' Opp'n 9.

### 3. Setting Aside Default Will Not Prejudice Plaintiffs

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Rather, 'the standard is whether [plaintiff's] ability to pursue his claim will be hindered.'" *Knoebber*, 244 F.3d at 701 (citing *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)). Plaintiffs contend that they will suffer prejudice if the default is set aside because the receipt of payment of contributions from Defendant will be delayed, because they will suffer financial loss in the provision of health and pension benefits to participants, and because "any delay makes it more likely that whatever individual assets Defendant may possess will be liquidated and unavailable to Plaintiffs." Pls.' Opp'n 10. Plaintiffs also argue that "Defendant's actions in this case demonstrate that he is willing to go to great lengths to avoid paying contributions owed to Plaintiffs." *Id.*

Defendant filed his motion to set aside the default just over a month after entry and less than a month after he claims he first realized that he had erred in not responding to the complaint. Plaintiffs do not point to any harm caused by this brief delay. As Defendant argues, the risks and hardships asserted by Plaintiffs are the natural results of being forced to litigate their claims on the merits. This is insufficient. *See, e.g.*, *Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1225 (9th Cir. 2000) (finding that the loss of a "quick victory" and potential rescheduling of a trial date were insufficient to require denial of a relief under Rule 60(b)(1)).

**B.    Motion for Default Judgment**

Because the Court will grant Defendant's motion to set aside the entry of default, Plaintiffs' motion for default judgment will be denied as moot.

7

**C.      Plaintiffs' Request for Attorneys' Fees**

Plaintiffs request that the Court grant Defendant's motion, if at all, only upon the condition that Defendant pay the attorneys' fees and costs they incurred in obtaining the entry of default and in opposing Defendant's motion to set the default aside. Defendant contends that Plaintiffs could have avoided the costs and fees either by informing him in advance that they intended to seek a default judgment or by stipulating to set aside the entry of default.

Because Plaintiffs have provided no evidence of bad faith on Defendant's part and made no attempt to contact Defendant personally prior to seeking entry of default, the Court concludes that Plaintiffs are not entitled to an award of attorney's fees and costs.

### V. ORDER

For the foregoing reasons, Defendant's motion to set aside the default is GRANTED, and Plaintiffs' motion for default judgment is DENIED.

DATED:   July 6, 2010

_____
JEREMY FOGEL
United States District Judge

8

Case No. C 10-461 JF
ORDER (1) GRANTING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT AND (2) DENYING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
(JFLC3)